*Let this be filed*
*Royce C. Lamberth*
*U.S.D.J. 10/7/09*

| UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA | **FILED** |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL DIAZ A/K/A KING,<br><br>Defendant. | MAY 1 3 1997<br>CLERK  U.S. DISTRICT COURT<br>DISTRICT OF COLUMBIA<br><br>Crim. Action No. 92-0331-01 (JHG) |

## MEMORANDUM OPINION AND ORDER

Presently before the Court is the defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("2255 Motion"), which was filed on April 24, 1997. For the reasons stated below, the motion will be denied. A hearing is unnecessary to resolve the instant motion, *see United States v. Pollard*, 959 F.2d 1011, 1031 (D.C. Cir.), *cert. denied*, 506 U.S. 915 (1992), and "the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255.

### I. Background

Following an undercover operation, the defendant and co-defendant Louis Pol were arrested and charged in a 16-count Indictment alleging multiple violations of Title 21, U.S. Code offenses and one violation of 18 U.S.C. § 2. "The total amount of the drugs recovered, as a result of the offense behavior, [was] 326.66 grams of cocaine base." Presentence Investigation Report ("PSR"), at 7, ¶11.

Pursuant to his plea, the defendant was convicted on October 28, 1992, of Count One, a violation of 21 U.S.C. § 846, conspiracy to distribute fifty grams or more of

1

cocaine base. Because the defendant had two prior convictions involving a controlled substance, he was subject to a mandatory term of life imprisonment. The plea agreement stated: "Mr. Diaz understands that pursuant to Title 21, U.S.C. § 841(a)(1) and § 841(b)(1)(A)(iii) this charge carries a mandatory minimum of life in prison." Plea Agreement ¶2 (filed October 28, 1992).

Prior to accepting the defendant's plea, this Court conducted an inquiry to ensure his plea was knowing and voluntary. In particular, the Court made certain that the defendant understood that, unless he obtained the benefit of a motion for a departure based upon substantial assistance (which the government did not promise to give him), he would be sentenced to life imprisonment.

Immediately prior to trial, the Court was advised by the defendant's counsel that a plea agreement had been reached:

> The Court: All right. Mr. Bond. You are rising on behalf of Mr. Diaz?
>
> Mr. Bond: I am, your Honor. I believe we are prepared to dispose the matter at this point.
>
> The Court: In what manner are your prepared to dispose of the case?
>
> Mr. Bond: It's been reduced to an agreement --
>
> The Court: A written agreement?
>
> Mr. Bond: Yes. Basically, Mr. Diaz and, as I understand it, Mr. Pol are prepared to plead guilty to Count one of the indictment, which is conspiracy to distribute in excess of 50 grams of crack cocaine. In exchange for that, the United States is agreeing to dismiss the other counts pending against them. They are reserving all the other things that they can do, including in the case of Mr. Diaz, enhancement papers, stepback--that is, they are not

> going to be agreeing to release him pending sentencing--and they are also reserving allocution.

Transcript of Plea Proceedings ("TR") at 33-34 (Oct. 28, 1992).

After the defendant was placed under oath, the Court addressed him directly about the plea agreement and ascertained that he understood he would be pleading guilty to a term of life imprisonment unless he obtained a motion from the government due to substantial assistance:

> The Court. Now, Mr. Diaz, I ask that you listen very carefully as your attorney, Mr. Ferris Bond, explains to me what he believes is what you are agreeing to plead guilty to and what is the benefit and what are the potential penalties to you. And, in turn, I will subsequently be asking you if this is what you have discussed with your attorneys and do you believe you are well informed about this. All right. Do you understand me?
>
> Defendant Diaz: Yes, ma'am.
>
> The Court: All right. If there comes a time when you don't sir, we're going to make it very clear that you do understand me. Mr. Bond.
>
> Mr. Bond: Yes ma'am.
>
> The Court: Tell me what you believe Mr. Diaz is pleading guilty to. And you've already started to address that.
>
> Mr. Bond: Your Honor, Mr. Diaz is pleading guilty to count one, which is a violation of 21 United States Code, Section 846. He's pleading guilty to conspiring to distribute in excess of 50 grams of crack cocaine.
>
> The Court: **According to the prepared written matter, it says that the charge carries a mandatory minimum of life in prison.**
>
> Mr. Bond: Judge, I don't believe the statute requires a mandatory minimum of life imprisonment, **but based upon Mr. Diaz's prior record, I believe the sentencing guidelines give the Court no discretion unless the United**

3

> States files a 5K1 letter or a subsequent Rule 35 motion.[1]
>
> The Court: **But that is a mandatory minimum of life imprisonment without parole or probation or any opportunity to suspend the execution of the sentence or any part of it. Would that be correct?**
>
> Mr. Bond: **Yes, Ma'am. And that's what I've advised Mr. Diaz.**
>
> The Court: What other promises, if any, has the government made in connection with this matter other than it would be dismissing the multiple other counts of this indictment? Does that include the forfeiture Count, Ms. Corken?
>
> Ms. Corken: Yes, Your Honor.
>
> The Court: At the time of sentence.
>
> Mr. Bond: Your Honor, well, one of the things that they have agreed to do is to let Mr. Pol plead to a count where he's not subjected to life imprisonment. The other thing they have agreed to do is allow Mr. Diaz to cooperate with the United States and attempt to provide information to them substantial enough to convince a committee in the United States Attorney's Office to decide to make a motion to depart downward at his sentencing under 5K1 of the sentencing guidelines.
>
> The Court: Am I correct that there are no promises in that regard by the government?
>
> Ms. Corken: That's correct, your Honor.
>
> Mr. Bond: The promise they have made him is that they will allow him the opportunity to cooperate.

TR at 34-36 (emphasis added).

> The Court then addressed the defendant:

---

[1] As explained below, it is the statute, not the Guidelines, that actually limited the Court's discretion in this matter. However, counsel's misstatement was harmless in that the source of the legal constraint did not affect the advice rendered to his client: the bottom line remained the same.

4

> The Court: All Right. Let me start the proceeding. Mr. Diaz, you have been sworn to tell the truth, sir. And as I indicated a few moments ago, if you don't understand the questions that I'm going to ask you and the statements that I may make, it is absolutely important that you stop me and that you have it made clear enough to you that you understand what you are doing. This is a very important time in your life, as I hope that you appreciate, and I want it to be very clear to you exactly what you are doing; what benefits, if any, you are deriving from this, but also what possible penalties may be imposed upon you. If you don't understand, we'll stop. I'll take the time to make certain that you do fully understand. All right?
>
> Defendant Diaz: Okay, Ma'am.

TR at 39-40.

During the proceeding, as the Court explained to the defendant that by pleading guilty he would forgo certain constitutional rights, such as the right to appeal his conviction, the defendant requested an opportunity to confer with his counsel:

> The Court: Do you further understand, sir, that if you had gone to trial and if you had been found guilty of any or all of these charges, you then would have had a right to go to the Court of Appeals in your effort to change that decision. And if you could not have afforded an attorney at the trial level, if you could not have afforded an attorney at the appellate level, if you could not have afforded a full record of everything that has been said in any courtroom in connection with you through this entire criminal justice proceeding, including the trial, all of that would have been paid for for you through the criminal justice system so that you would have your full right to representation and to a record before any court necessary. But, obviously, if I accept your plea of guilty, you are effectively giving up your right to go to the Court of Appeals. Your only right would be if I gave you an illegal sentence. And I assure, I don't intend to give you an illegal sentence.[2]
>
> Defendant Diaz: What's -- excuse me.

---

[2] At sentencing, the Court also advised the defendant of his right to appeal the sentence imposed. Transcript of Sentencing Hearing at 12 (Feb. 9, 1993).

> The Court: Do you understand that"
>
> Defendant Diaz: No.
>
> The Court: You're giving up your right to go to the Court of Appeals. Do you understand that? If you had been found guilty, sir, you would have had a right to have this reviewed by the Court of Appeals. They would have looked at it and they would have said were there any mistakes done here, any errors done here, should we change this decision or should we let this decision stand. Well, if there is no trial, the Court of Appeals does not have that to review. So you are giving up your right to go to the Court of Appeals. Do you understand that?
>
> Defendant Diaz: Yes.
>
> The Court: Are you sure?
>
> Defendant Diaz: Uh-Uh.
>
> The Court: Well, what don't you understand about it, sir?
>
> Defendant Diaz: I want to ask my counsel something.
>
> > (Defendant Diaz and counsel consult)
>
> Mr. Bond: Judge, I know this kind of unusual, but could we have a brief recess so I can talk to Mr. Diaz?
>
> The Court: Well, obviously. But I really -- if we're not going to plea, that's fine with me. Certainly Mr. Diaz is not under any compulsion by the court to plea. I don't care if he pleads or not.

TR at 45-46.

> Twenty minutes later, the Court reconvened and addressed Mr. Diaz:
>
> The Court: Mr. Diaz, you remain under oath. And as you will recall, before we took this recess at your counsel's request, and your request, I was asking you some questions. What do you plan to do? Do you wish to withdraw this beginning of the plea that you were making to the Court, or do you wish to give a plea to the Court?

6

Defendant Diaz: I wish to give a plea.

The Court: And you're certain you've had enough time to talk to your lawyers about this.

Defendant Diaz: Yes, I did, ma'am.

The Court: Now when we stopped, I was asking you some questions concerning did you understand that if you didn't have a trial, there wouldn't be any right to go to the Court of Appeals, but that if you did have a trial, then, of course, you had a right to go to the Court of Appeals. So since you are pleading to me and giving up your right to go to trial, you are giving up your right to go the Court of Appeals. Do you now understand what that means?

Defendant Diaz: Yes, ma'am.

The Court: All right. Are you making this plea of guilty and guilty to the first count as you have indicated because you are guilty of that, and are you making it voluntarily or for any other reason?

Defendant Diaz: Because I'm guilty. And voluntarily.

The Court: Are you making your plea voluntarily?

Defendant Diaz: Mm-hm.

The Court: Does that mean yes?

Defendant Diaz: Yes ma'am.

The Court: All right. You know we're taking everything down on a record, so I have to have the full words from you, whatever those words are.

Defendant Diaz: Okay.

The Court: All right. Sir, I started to ask you this question a moment ago; let me finish it. You are represented by Mr. Ferris Bond, who is standing next to you, and also today by Mr. --- John, is it?

Mr. Rubens: Rubens, Your Honor.

The Court: Rubens. Have you been satisfied with their professional services to you and have you had enough time to talk to them about any matters concerning this case?

Defendant Diaz: Yes. I'm satisfied.

The Court: Sir, do you understand that if I accept your plea of guilty, because the government has filed papers with us, what we call an information as to your prior convictions, which the government is not withdrawing in your case, **that the charge against you on the conspiracy count, if I accept the plea of guilty, will carry a mandatory term of life in prison?**

Defendant Diaz: **Yes, I understand.**

The Court: **It is not less than life. It is a mandatory term of life in prison with no chance of parole, no chance of probation, no chance of anything less than life in prison. Do you understand?**

Defendant Diaz: **Yes.**

The Court: Sir, are you today under the influence of any kind of alcohol or drug whatsoever? Have you used any alcohol or drug whatsoever today?

Defendant Diaz: No, Ma'am.

The Court: Do you believe you fully know what you are doing in making this plea of guilty?

Defendant Diaz: Yes. I do.

TR at 46-49 (emphasis added).

Following this colloquy, Diaz stated that he understood that if he cooperated, the government might file a motion for a departure pursuant to §5K1.1, if the government was satisfied with his cooperation. TR at 50-51. However, he also acknowledged that the government was under no obligation to do so and that it had not promised to do so in

8

his case. *Id.* at 51. The Court then inquired about whether the defendant understood the plea agreement:

> The Court: Have you read these full eight pages that appear to have been signed by you?
>
> Defendant Diaz: Yes, I did.
>
> The Court: -- of this plea agreement that is dated today's date?
>
> Defendant Diaz: Yes.
>
> The Court: Is that your signature, sir, that I see on the back of the plea agreement?
>
> Defendant Diaz: Yes, it is.[3]

---

[3] The Plea Agreement contained a provision above the defendant's signature, which stated in whole:

### DEFENDANT'S ACCEPTANCE

I have read this plea agreement and have discussed it with my attorney, Mr. Ferris Bond, Esquire. I fully understand this agreement and agree to it without reservation. I do this voluntarily and of my own free will, intending to be legally bound. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this agreement fully.

I reaffirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in this plea agreement.

I am satisfied with the legal services provided by attorney in connection with this plea agreement and matters related to it.

Date: 10/28/92                                      // Signed //
                                                    MICHAEL DIAZ
                                                    Defendant

Plea Agreement at 8-9.

>The Court: Is that signature underneath you[rs] of your attorney[s], Mr. Bond and Mr. Rubens?
>
>Defendant Diaz: Yes. It's their signature.
>
>The Court: All right. And you've fully read all of this document and understand all of its particulars?
>
>Defendant Diaz: Yes ma'am.

TR at 52.

Immediately prior to accepting his plea, the Court inquired one last time whether the defendant knew that he was pleading to an offense that carried a mandatory life sentence:

>The Court: All right. Mr. Diaz, you have had enough time to talk about this potential plea, have you not?
>
>Defendant Diaz: Mm-hm. Yes.
>
>The Court: Is that yes? All right. And are you asking me now, with full understanding of what the possible consequences are, with full understanding of what the government believes that it could have proven if it went to trial -- **are you asking me to accept your plea of guilty to count one of this indictment which charges, in effect, conspiracy to distribute 50 grams or more of cocaine base, in violation of law, and which carries a mandatory life sentence in prison?**
>
>Defendant Diaz: **Yes.**

TR at 61 (emphasis added).

The defendant did not receive a motion for a departure based on substantial assistance to the government, *see* Sealed Transcript of Sentencing Hearing at 5-6, and on February 3, 1993, at his sentencing, his counsel noted: "Mr. Diaz is facing the rest of his

10

life in prison." Transcript of Sentencing Hearing at 9. This Court then sentenced the defendant to be imprisoned for a term of life. *Id.* at 11; Judgment in a Criminal Case at 2 ("JNC") (filed Feb. 9, 1993). He did not appeal his conviction or his sentence.

On December 7, 1995, this Court granted the defendant's application to proceed *in forma pauperis* and authorized that the transcripts of the plea and sentencing hearings be provided to him. *See* Order of Dec. 7, 1995 [Docket No. 45]. On January 31, 1996, this Court denied the defendant's motion for the appointment of counsel, stating:

> In this case, the interests of justice would not be served by the appointment of counsel. The issues in the case are not complex, and it is not now apparent that an evidentiary hearing would be required to review the defendant's claims. The defendant's previous petitions to the Court indicate that, despite only a ninth-grade education, he is able to communicate effectively. The underlying record and transcript of the guilty plea and sentencing proceedings, which have been provided to the defendant at his request, do not suggest that appointment of counsel is necessary in the interests of justice.

Order of Jan. 31, 1996, at 1-2 [Docket No. 48].

On February 13, 1996, upon considering the defendant's Motion for Reconsideration of Order Denying Motion for Appointment of Counsel, this Court ruled that it would hold the motion in abeyance until the defendant filed his petition under 28 U.S.C. § 2255. "Upon reviewing the defendant's petition, the Court will be better situated to determine whether appointment of counsel is necessary and appropriate. If such appointment is warranted, counsel could refine the arguments presented by the defendant or present new arguments as appropriate." Order of Feb. 13, 1996 at 1 [Docket No. 50].

11

The defendant did not file a *pro se* petition, and, on January 6, 1997, the United States moved that the Court deny the motion for reconsideration for failure to prosecute. *See* Motion to Order Defendant to File his § 2255 Motion at 1 [Docket No. 51]. On January 8, 1997, this Court stated that she would not hold the defendant's motion for reconsideration in abeyance indefinitely and ordered that "unless the defendant files his petition pursuant to 28 U.S.C. § 2255 on or before March 7, 1997, his Motion for Reconsideration of Order Denying Motion for Appointment of Counsel will stand denied without further Order of this Court." Order of Jan. 8, 1997, at 1 [Docket No. 52]. The defendant did not file his petition, and the motion for reconsideration was therefore denied.

On April 24, 1997, through counsel, the defendant filed a petition under § 2255. While failing to explain why he did not appeal, *see* 2255 Motion at 4, the defendant identified two grounds for relief:

> Ground One: District Court Failed to Make Downward Departure.
> Supporting FACTS: The District Court in sentencing Petitioner, indicated it was restricted by the guidelines and had no option but to sentnece (sic) Petitioner to life incarceration. The United States Supreme Court has made clear that the district court does have the option to exercise its discretion in sentencing a defendant and may sentence a defendant to a lower sentence than called for in the guidelines. This is a case in which the district court should exercise its discretion and make a downward departure.
>
> Ground Two: Ineffective Assistance of Counsel.
> Supporting FACTS: Counsel failed in his representation during the plea portion of the case to adequately advise the defendant that by pleading guilty he was going to receive a mandatory life sentence. Had Petitioner known that he was pleading guilty to a mandatory life sentence he would have insisted upon going to trial. Counsel also failed during the sentencing

phase of the case to present any arguemtns (sic) in favor of a downward departure. Effectively, Petitioner had no counsel, as upon his guilty plea he received the maximum sentnenc (sic) with little to no effort on the part of counsel to effect any change.

2255 Motion at 5.

## II. Discussion

Putting the merits aside, the defendant's 2255 Motion will be denied due to its procedural defects. First, the motion is untimely. The Antiterrorism and Effective Death Penalty Act of 1996, which was signed into law on April 24, 1996, amended 28 U.S.C. § 2255 to provide a one-year period of limitation within which § 2255 motions must be filed. *See* § 105, Pub.L.No. 104-132, 110 Stat. 1220 (Apr. 24, 1996).[4] The defendant's conviction has long been final, and neither the record nor his petition support application of any of the other trigger provisions of Section 105. Consequently, to be timely, the defendant's petition must have been filed on or before April 23, 1997. *United States v.*

---

[4] This section provides:

> A 1-year period of limitation shall apply to a motion under [§ 2255]. The limitation period shall run from the latest of--
> (1) the date on which the judgment of conviction becomes final;
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution of laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*Simmonds*, __ F.3d __, __, 1997 WL 177560 *8 (10th Cir. Apr. 14, 1997); *Calderon v. United States District Ct.*, __ F.3d __, 1997 WL 197546 *3 (9th Cir. Apr. 17, 1997); *Lindh v. Murphy*, 96 F.3d 856, 866 (7th Cir. 1996) (en banc), *cert. granted in part*, 117 S.Ct. 726 (1997). The defendant filed his petition on April 24, 1997, and he has not identified <u>any</u> equitable reason for tolling. The motion will therefore be denied as untimely.

Second, even were the Court to toll the statute of limitations applicable to the defendant's 2255 Motion, it would be rejected because of his procedural default, *see United States v. Frady*, 456 U.S. 152, 167 (1982); *United States v. Sanchez*, 88 F.3d 1243, 1248 (D.C. Cir. 1996), and on the merits. The defendant failed to appeal. And, in his 2255 Motion, he has failed to identify cause for his failure to appeal or actual prejudice resulting therefrom. *Frady*, 456 U.S. at 167-68, 170-71. Nor has he shown that failure to excuse this default would lead to a fundamental miscarriage of justice. *See, e.g., United States v. MacDonald*, 966 F.2d 854, 859 (4th Cir.), *cert. denied*, 506 U.S. 1002 (1992). This constitutes procedural default of at least the first ground identified in his 2255 Motion. *Frady*, 456 U.S. at 167-68; *see Boyer v. United States*, 55 F.3d 296, 298 (7th Cir.), *cert. denied*, 116 S.Ct. 268 (1995). *But cf. Ciak v. United States*, 59 F.3d 296, 303-04 (2nd Cir. 1995) (claims of ineffective assistance excused from procedural default).

The record also makes clear that the defendant's claims would fail on the merits. His first claim of error falls flat, because his sentence was controlled by a <u>statutory</u>

mandatory minimum, not the Sentencing Guidelines. Absent a motion by the government reflecting the defendant's substantial assistance or qualification under the criteria of the safety valve provision of U.S.S.G. §5C1.2, the Court has no authority to depart below a statutory minimum. *See* 18 U.S.C. § 3553(e) (authority to depart based upon government's motion for substantial assistance); *id.* § 3553(f) (authority to depart based upon safety valve provision for certain offenders); U.S.S.G. §5C1.2 (safety valve); *id.* §5K1.1 (substantial assistance); *United States v. Thomas*, 11 F.3d 732, 736-37 (7th Cir. 1993), *cert. denied*, 513 U.S. 960 (1994); *United States v. Campbell*, 995 F.2d 173, 175 (10th Cir. 1993).

In this case, the defendant did not receive a motion for a departure based on substantial assistance under 18 U.S.C. § 3553(e) and §5K1.1 nor did he meet the criteria for application of the safety valve provisions under 18 U.S.C. § 3553(f) and §5C1.2. Consequently, as reflected in the record, the Court had no authority to depart below the <u>statutory</u> mandatory minimum. *See* Transcript of Sentencing Hearing at 10; PSR at 16; JNC at 4 (adopting PSR).

In his argument, the defendant appears to confuse the limited authority to depart below a statutory mandatory minimum with the broader authority to depart below a sentencing range established by the Guidelines. While it may be error in a case not controlled by a statutory mandatory minimum to deny a departure on the ground that the Court has no discretion to depart below the Guidelines where discretion actually exists and a proper motion is made, *see, e.g., United States v. Beckham*, 968 F.2d 47, 54-55

(D.C. Cir. 1992), this case was controlled by the statute. The defendant's problem is not that he was classified as a career offender under U.S.S.G. §4B1.1, but that the statute provided in no uncertain terms: "If any person commits a violation of this subparagraph . . . after two or more convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release and fined in accordance with the preceding sentence." 21 U.S.C. § 841(b)(1)(A). This provision limited the Court's sentencing discretion. Absent application of one of the two statutory bases for departure, this Court had no authority to depart below the mandatory minimum of life imprisonment.

Even had the sentence not been controlled by the statute and had the defendant made a motion for a departure below the Guidelines, such a motion would have been denied simply because there were no valid grounds upon which to have departed (nor did the defendant identify any such grounds--either at his sentencing or in his instant 2255 Motion). While a downward departure <u>below the Guidelines range</u> under §4A1.3 may be appropriate for a career offender whose category over-represents the defendant's criminal history, see Beckham, 968 F.2d at 54-55, that is not this case.[5] (Unlike the defendant in Beckham, see id. at 53, Defendant Diaz never identified any ground for a departure).

Rather than over-representing the seriousness of the defendant's criminal history

---

[5] "Of course, a departure under U.S.S.G. §4A1.3 is only justified in the rare and unusual case in which a defendant's criminal history category significantly overrepresents the seriousness of his past conduct and future threat to society." Beckham, 968 F.2d at 55.

or reflecting that recidivism was unlikely, *see id.* at 54; *United States v. Clark*, 8 F.3d 839, 843 (D.C. Cir. 1993), the count of which he was convicted pursuant to his plea was entirely representative of the defendant's criminal history. Both of the defendant's prior felony convictions (i.e., criminal sale of a narcotics in New York, New York in 1987, and the distribution of cocaine in Fairfax, Virginia in 1988, *see* PSR at 9-10) were for the same offense conduct underlying the offense to which he pled guilty in this case-- conspiracy to distribute 50 grams or more of cocaine base in 1992. Both of the earlier offenses occurred while he was an adult and both were relatively close in time to his 1992 conviction.[6] As detailed in the PSR and at the plea colloquy, the 1992 conviction for conspiracy to distribute cocaine base was based on extensive criminal activity involving a significant quantity of narcotics--over 325 grams of cocaine base. Rather than forming the basis for a departure, the facts before the Court, and specifically those underlying the 1992 conspiracy conviction, demonstrated not that the defendant had learned from his past encounters with the criminal justice system, but that for whatever reasons and to whatever end, he had decided to deepen his involvement in the illegal sale of narcotics. At the defendant's sentencing, this Court noted the severity of the sentence, but severity alone is not a ground for departure under the Guidelines, *see Beckham*, 968 F.2d at 54, and it certainly cannot be used as a basis to depart from the statutory mandatory

---

[6] The defendant also received one criminal history point for a Bail Act Violation (a misdemeanor) in the Superior Court of Washington, D.C. in 1988, after he failed to appear for a status hearing on a possession with intent to distribute cocaine charge. PSR at 10.

minimum set by Congress. *See Thomas*, 11 F.3d at 737. Even had the Guidelines controlled the defendant's sentence, a motion for a departure (were one made) would not have been granted in this case simply because none was warranted.

His second claim of error, in which he contends that he was never told about the mandatory life sentence that he faced by pleading guilty, fares no better. This Court repeatedly inquired to ensure that the defendant understood that he was pleading guilty to a sentence that carried a mandatory life sentence, and the defendant repeatedly told this Court, while he was under oath, that he did so understand. *See supra.* Unlike the facts presented in *United States v. Thompson*, 27 F.3d 671, 674-75 (D.C. Cir.), *cert. denied*, 513 U.S. 1050 (1994), the record makes crystal clear that the defendant's counsel properly advised him of the potential consequences of his guilty plea before the defendant decided to plead guilty,

Nor does the Court accept the defendant's argument that he was rendered ineffective assistance because counsel failed to argue for a departure. To make out a Sixth Amendment violation, the defendant must show not only that his counsel was deficient but this deficiency resulted in prejudice: "there must be a 'reasonable probability'--defined as 'a probability sufficient to undermine confidence in the outcome'--that 'but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Thompson*, 27 F.3d at 675 (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).

Here, the defendant has shown neither a deficiency in his representation nor that a

motion (on some unidentified ground) would have changed his sentence. As explained above, the defendant's sentence was controlled by the statute. The record reflects that his counsel recognized that the defendant's own background eliminated the application of the safety valve and therefore undermined the ability to seek a departure. *See* TR at 36; Transcript of Sentencing Hearing at 9. Counsel is not required to make motions that stand no chance of success in order to blunt claims of ineffective assistance. Even had counsel moved for a departure, the Court could not have departed because the statute controlled and the defendant neither received a substantial assistance motion under 18 U.S.C. § 3553(e) and §5K1.1 nor qualified for the safety valve of 18 U.S.C. § 3553(f) and §5C1.2. *See supra*.

The record in this matter is clear: the defendant entered into a plea agreement with the government in the hope of obtaining a substantial assistance departure in order to avoid the mandatory sentence of life imprisonment. At the plea hearing, while under oath, he told this Court that he understood that he was pleading guilty to an offense that carried a mandatory sentence of life in prison and that he understood that the government was not obligated to move for a departure at sentencing if it was not satisfied with the cooperation that he provided.[7] He recognized the risks, but he accepted the bargain. Now, while he may regret that decision, he cannot deny that it was his decision to make and his alone. He can, of course, complain about the consequences of that decision, but

---

[7] The defendant also told this Court that he was fully satisfied with the performance of his counsel. TR at 49; *see* Plea Agreement at 9.

neither his current regrets nor his after-the-fact complaints entitle him to legal relief under 28 U.S.C. § 2255.

### III. Conclusion

Accordingly, the defendant's 2255 Motion is **DENIED**.

IT IS SO ORDERED.

May 13, 1997.

                                          JOYCE HENS GREEN
                                          United States District Judge